## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

In re:                                              Case No. 19-19182

Le Jardin House, LLC                                Chapter 11

       Debtor.

_____/

## DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF
## REORGANIZATION OF LE JARDIN HOUSE, LLC

**EDELBOIM LIEBERMAN**
**REVAH OSHINSKY PLLC**
*Counsel for the Debtor*
20200 W. Dixie Highway, Suite 905
Aventura, Florida 33180
Telephone No. 305.768.9909
Facsimile No. 305.928.1114
Email: brett@elrolaw.com

/s/ Brett D. Lieberman
Brett D. Lieberman
Florida Bar No. 69583

Dated: October 8, 2019.

1

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE
BANKRUPTCY COURT. AS SUCH, DEBTOR IS NOT CURRENTLY SOLICITING
VOTES ON THE PLAN AND DISCLOSURE STATEMENT. IT IS ANTICIPATED THAT
A COMBINED HEARING TO CONSIDER CONFIRMATION OF THE PLAN AND
DISCLOSURE STATEMENT PURSUANT TO SECTION 1129 OF THE BANKRUPTCY
CODE WILL BE SCHEDULED. DEBTOR RESERVES THE RIGHT TO MODIFY OR
SUPPLEMENT THE PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT
UP TO AND INCLUDING THE TIME OF CONFIRMATION OF THE PLAN.

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 4
   1.1.    PURPOSE OF DISCLOSURE STATEMENT .............................................. 4
   1.2.    PLAN CONFIRMATION GENERALLY ...................................................... 5
   1.3.    TIME AND PLACE OF HEARING FOR FINAL APPROVAL ................. 5
   1.4.    DEADLINE FOR VOTING TO ACCEPT OR REJECT .......................... 5
   1.5.    DEADLINE FOR OBJECTIONS ................................................................ 5
   1.6.    CONTACT FOR MORE INFORMATION ................................................ 5
   1.7.    DISCLAIMER ............................................................................................... 5
II.    BACKGROUND ............................................................................................. 7
   2.1.    DESCRIPTION AND HISTORY OF DEBTOR'S BUSINESS ................. 7
   2.2.    EVENTS LEADING TO CHAPTER 11 FILING ....................................... 7
   2.3.    SIGNIFICANT EVENTS DURING BANKRUPTCY CASE ..................... 8
III.    SUMMARY OF THE PLAN ........................................................................ 9
   3.1.    CLAIMS AND INTERESTS ....................................................................... 9
     3.1.1.    Unclassified Claims ........................................................................... 9
     3.1.2.    Classified Claims and Interests .................................................... 10
   3.2.    MEANS OF IMPLEMENTING PLAN ..................................................... 12
   3.3.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................. 13
IV.    RISK FACTORS TO CONSIDER ............................................................ 13
   4.1.    Parties in Interest May Object to Debtor's Classifications ................. 14
   4.2.    Possible Loss of Favorable Tax Attributes ........................................... 14
   4.3.    Debtor May Not Be Able to Secure Confirmation of the Plan .............. 14
   4.4.    Inherent Uncertainty of Financial Projections ..................................... 14
   4.5.    Executory Contracts and Unexpired Leases ......................................... 15
   4.6.    Tax Consequence of Plan ........................................................................ 15
     4.6.1.    Consequences to Holders of Secured Claims ............................ 15
     4.6.2.    Consequences to Holders of Priority Claims ............................ 16

4.6.3.   **Consequences to Holders of General Unsecured Claims** ................................. 16

4.6.4.   **Consequences to Equity Interest Holders** ............................................................ 16

4.6.5.   **Certain U.S. Federal Income Tax Consequences of the Plan** ......................... 16

4.6.6.   **Backup Withholding and Reporting** ...................................................................... 17

4.6.7.   **IRS Circular 230 Notice** ............................................................................................ 17

V.     **CONFIRMATION REQUIREMENTS AND VOTING PROCEDURES** ................... 17

5.1.   **WHO MAY VOTE OR OBJECT** .................................................................................... 17

5.1.1.   **Claims Entitled to Vote** .............................................................................................. 17

5.1.2.   **Who is Not Entitled to Vote** ...................................................................................... 18

5.1.3.   **Who Can Vote in More than One Class** ................................................................ 18

5.2.   **HOW TO VOTE** .................................................................................................................. 18

5.3.   **VOTE NECESSARY TO CONFIRM PLAN** ............................................................... 19

5.3.1.   **Votes Necessary for a Class to Accept the Plan** ................................................. 19

5.3.2.   **Treatment of Non-Accepting Classes** .................................................................... 19

VI.   **ALTERNATIVES TO CONFIRMATION AND CONSUMMATION** ........................ 19

6.1.   **LIQUIDATION UNDER CHAPTER 7** .......................................................................... 20

6.2.   **OTHER ALTERNATIVES** ............................................................................................... 20

VII. **SUMMARY, RECOMMENDATION, AND CONCLUSION** ........................................ 20

[Remainder of Page Intentionally Left Blank]

**DISCLOSURE STATEMENT IN CONNECTION WITH
DEBTOR'S CHAPTER 11 PLAN**

## I.    INTRODUCTION

This *Disclosure Statement in Support of Debtor's Chapter 11 Plan* is proposed by Debtor.[1] This Disclosure Statement contains information about Debtor and describes the *Debtor's Chapter 11 Plan*. The Plan is attached to this Disclosure Statement as **Exhibit "A."**

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY AND DISCUSS WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**IN THE OPINION OF DEBTOR, TREATMENT OF CLAIMS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY FOR HOLDERS OF THOSE CLAIMS THAN IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR. DEBTOR URGES THAT ALL CREDITORS ENTITLED TO VOTE ON THE PLAN VOTE IN FAVOR OF THE PLAN. DETAILED INSTRUCTIONS REGARDING HOW TO VOTE ON THE PLAN ARE CONTAINED IN ARTICLE V OF THIS DISCLOSURE STATEMENT.**

### 1.1.    PURPOSE OF DISCLOSURE STATEMENT

This Disclosure Statement is being submitted in accordance with the requirements of Section 1125 of the Bankruptcy Code. This Disclosure Statement describes: (1) the Debtor and significant events during Debtor's bankruptcy case; (2) how the Plan proposes to treat Claims or Equity Interests of the type you hold (*i.e.,* what you will receive on account of your Claim or Equity Interest if the Plan is confirmed); (3) who can vote on or object to the Plan; (4) what factors the Bankruptcy Court will consider when deciding whether to confirm the Plan; (5) why Debtor believes the Plan is feasible, and how treatment of your Claim or Equity Interest under the Plan compares to what you would receive on your Claim or Equity Interest in an alternative liquidation; and (6) the effect of Confirmation of the Plan.

This Disclosure Statement also summarizes terms and provisions of the Plan, certain effects of confirmation of the Plan, issues relating to assets to be liquidated under the Plan, securities to be canceled under the Plan, and the manner in which Distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that Holders of Claims entitled to vote on the Plan must follow for their votes to be counted. Objections to this Disclosure Statement (if any) will be considered by the Bankruptcy Court on _____, 2019 at _____ ___.m.

**BE SURE TO READ THE PLAN AS WELL AS THE DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT DESCRIBES THE PLAN, BUT IT IS THE PLAN ITSELF THAT WILL, IF CONFIRMED, ESTABLISH YOUR RIGHTS.**

---

[1] Unless otherwise defined herein, all capitalized terms used in this Disclosure Statement shall have the meanings ascribed to them in the Plan.

### 1.2.    PLAN CONFIRMATION GENERALLY

The Bankruptcy Court has not yet confirmed the Plan described in this Disclosure Statement. This Disclosure Statement describes the procedures pursuant to which the Plan will (or will not) be confirmed.

### 1.3.    TIME AND PLACE OF HEARING FOR FINAL APPROVAL

The Bankruptcy Court will conduct a combined hearing to finally approve this Disclosure Statement as providing "adequate information" pursuant to Section 1125 of the Bankruptcy Code and to confirm the Plan on _____, 2019 at __:_0_ .m. (EST) at United States Bankruptcy Court for the Southern District of Florida (Miami Division), C. Clyde Akins United State Courthouse, 301 North Miami Avenue, Courtroom _____, Miami, FL 33128.

### 1.4.    DEADLINE FOR VOTING TO ACCEPT OR REJECT

If you are entitled to vote to accept or reject the Plan, you must cast your vote on the enclosed Ballot and return the Ballot to Clerk of Court, U.S. Bankruptcy Court (Miami Division), C. Clyde Akins United State Courthouse, 301 North Miami Avenue, Courtroom _____, Miami, FL 33128, and a copy of the executed Ballot should also be mailed to counsel for the Debtor, **Brett D. Lieberman, Edelboim Lieberman Revah Oshinsky PLLC, 20200 W. Dixie Highway, Suite 905, Aventura, FL.** You should carefully review Article V below for a discussion of voting eligibility, requirements, and procedures. Your properly completed Ballot must be received by **4:00 p.m. EST** on _____, **2019**, or it will not be counted.

### 1.5.    DEADLINE FOR OBJECTIONS

Objections to this Disclosure Statement or to Confirmation of the Plan must be filed with the Bankruptcy Court and properly served upon parties by _____, 2019 and as required by the Bankruptcy Court and the applicable Rules, with a copy to counsel for the Debtor, **Brett D. Lieberman, Edelboim Lieberman Revah Oshinsky PLLC, 20200 W. Dixie Highway, Suite 905, Aventura, FL 33180**.

### 1.6.    CONTACT FOR MORE INFORMATION

If you want additional information about the Plan, you should contact counsel for the Debtor, **Brett D. Lieberman, Edelboim Lieberman Revah Oshinsky PLLC, 20200 W. Dixie Highway, Suite 905, Aventura, FL 33180.**

### 1.7.    DISCLAIMER

**THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED HEREIN WILL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR, THE TRUSTEE, OR ANY OTHER PARTY, OR BE**

DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR. THE BANKRUPTCY COURT MAY CONDITIONALLY APPROVE THIS DISCLOSURE STATEMENT AS CONTAINING "ADEQUATE INFORMATION" OF A KIND AND IN SUFFICIENT DETAIL TO ENABLE PARTIES AFFECTED BY THE PLAN TO MAKE AN INFORMED JUDGMENT ABOUT ITS TERMS. THE BANKRUPTCY COURT HAS NOT YET DETERMINED WHETHER THE PLAN MEETS THE LEGAL REQUIREMENTS FOR CONFIRMATION, AND THE FACT THAT THE BANKRUPTCY COURT HAS (OR MAY HAVE) CONDITIONALLY APPROVED THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT, OR A RECOMMENDATION THAT IT BE ACCEPTED. THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT IS SUBJECT TO FINAL APPROVAL AT THE COMBINED HEARING ON CONFIRMATION OF THE PLAN. AGAIN, OBJECTIONS TO THE ADEQUACY OF THIS DISCLOSURE STATEMENT MAY BE FILED UP TO AND INCLUDING _____, 2019.

THE FINANCIAL ANALYSIS PROVIDED IN THIS DISCLOSURE STATEMENT HAS BEEN PREPARED AND/OR REVIEWED BY DEBTOR. THESE PROJECTIONS AND ANALYSES, WHILE PRESENTED WITH NUMERICAL SPECIFICITY IN THIS DISCLOSURE STATEMENT, NECESSARILY ARE BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS WHICH, ALTHOUGH CONSIDERED REASONABLE BY DEBTOR, MAY NOT PROVE TO BE TRUE OR ACCURATE. THE PROJECTIONS AND ANALYSES (AND THE ESTIMATES AND ASSUMPTIONS ON WHICH THEY ARE BASED) ARE SUBJECT TO A VARIETY OF CONTINGENCIES AND SIGNIFICANT BUSINESS, ECONOMIC, COMPETITIVE, INDUSTRY-SPECIFIC, REGULATORY, AND OTHER FINANCIAL UNCERTAINTIES. MOST OF THESE RISKS AND UNCERTAINTIES ARE BEYOND DEBTOR'S CONTROL. IT IS LIKELY THAT SOME OF THE ASSUMPTIONS ON WHICH THE PROJECTIONS AND ANALYSES ARE BASED WILL TURN OUT TO BE INACCURATE FOR A VARIETY OF REASONS, INCLUDING THE OCCURRENCE OF EVENTS AND CIRCUMSTANCES SUBSEQUENT TO THE DATE ON WHICH THOSE PROJECTIONS AND ANALYSES WERE PREPARED THAT ARE DIFFERENT FROM THOSE ASSUMED. THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER. THESE PROJECTIONS AND ANALYSES, THEREFORE, MAY NOT BE RELIED UPON AS A GUARANTEE OR OTHER ASSURANCE OF FINANCIAL PERFORMANCE, RESULTS, OR ASSURANCE OF THE AMOUNT OF DISTRIBUTIONS UNDER THE PLAN.

THE DEBTOR BELIEVES THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND HOLDERS OF INTERESTS. ALL CREDITORS AND HOLDERS OF INTERESTS ARE URGED TO VOTE IN FAVOR OF THE PLAN. TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED AND EXECUTED AND RECEIVED BY NO LATER THAN THE TIME SET BY THE COURT, UNLESS EXTENDED.

IN THE EVENT THAT ANY OF THE CLASSES OF HOLDERS OF IMPAIRED CLAIMS VOTE TO REJECT THE PLAN, AND IN ALL LIKELIHOOD, (1) DEBTOR

**MAY ALSO SEEK TO SATISFY THE REQUIREMENTS FOR CONFIRMATION OF THE PLAN WITH RESPECT TO THAT CLASS UNDER THE "CRAM-DOWN" PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE AND, IF REQUIRED, MAY FURTHER AMEND THE PLAN TO CONFORM TO SUCH REQUIREMENTS, OR (2) THE PLAN MAY BE OTHERWISE MODIFIED OR WITHDRAWN. THE REQUIREMENTS FOR CONFIRMATION, INCLUDING THE VOTE OF HOLDERS OF IMPAIRED CLAIMS TO ACCEPT THE PLAN AND CERTAIN OF THE STATUTORY FINDINGS THAT MUST BE MADE BY THE BANKRUPTCY COURT, ARE SET FORTH IN THE BANKRUPTCY CODE.**

## II.    BACKGROUND

### 2.1.    DESCRIPTION AND HISTORY OF DEBTOR'S BUSINESS

The Debtor is the owner and developer of a 30-unit condominium project located at 1150 102nd Street, Bay Harbour Islands, FL 33152 (the "**Building**") which is comprised of 30 separate units (the "**Real Property**"). The Debtor intends to sell condominium units in order to fund the proposed Plan.

### 2.2.    EVENTS LEADING TO CHAPTER 11 FILING

Prior to the commencement of the Debtor's Chapter 11 case, 17 of the 30 condominiums in the Building were under contract for sale and the prospective buyers had already paid deposit amounts for the purchase of the subject units. However, the Debtor was unable to close on the sale of these units due to a pending action in the circuit court of the Eleventh Judicial Circuit in Miami-Dade County filed by a purported creditor[2] asserting an equitable lien on the Building and its filing of a lis pendens (the "**Lis Pendens**") in connection with same (Case no. 17-22215-CA-01) (the "**State Court Action**"). On April 22, 2019, the Debtor filed an emergency motion to dissolve the Lis Pendens in the State Court Action. Thereafter, on April 29, 2019, the court in the State Court Action entered an order granting the Motion to Dissolve Lis Pendens. On May 7, 2019, a notice of appeal of the Order Dissolving Lis Pendens was filed by the plaintiffs in the State Court Action. The Building is also subject to a senior secured mortgage held by Titan Capital, the main lender for the construction of the Building.

In light of the Debtor's inability to consummate the sale of the then pending condominium unit purchases, the Debtor's cash flow was materially adversely affected and caused the Debtor to be unable to meet its debt service obligations to Titan Capital and the Titan Subordinated Lender.

As a result of the foregoing, the Debtor commenced this Bankruptcy Case to, among other things, facilitate the sale of the Real Property Assets. In commencing this Bankruptcy Case, the Debtor determined that the Chapter 11 process was an appropriate mechanism to reorganize its affairs and that the Bankruptcy Code offered tools that would be useful to facilitate same.

---

[2] Le Jardin Residence Lenders LLC ("LJRL") and Le Jardin Residence Managers LLC ("LJRM") are the plaintiffs in the State Court Action. Le Jardin Capital LLC ("LJC") is an intervenor in the State Court Action.

As more fully set forth below, since the commencement of the Debtor's Bankruptcy Case, the Debtor has been authorized to sell the 18-condominium units which were under contract for sale as of the Petition Date with anticipated net proceeds (after payment of costs directly related to the closings) of approximately $6,180,286.37.

2.3.    **SIGNIFICANT EVENTS DURING BANKRUPTCY CASE**

On July 11, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing its bankruptcy case.

On July 17, 2019, the Debtor filed a motion seeking an order of the Bankruptcy Court authorizing the employment and retention of Brett D. Lieberman, Esq. and Edelboim Lieberman Revah Oshinsky PLLC as attorneys for the Debtor and Debtor-in-Possession *nunc pro tunc* to the Petition Date.

On July 25, 2019, the Debtor filed a motion for entry of an order approving the proposed sale of the Debtor's interests in certain of the Debtor's Real Property Assets free and clear of all liens, claims, encumbrances and interests and to pay fees and costs associated with the foregoing sales.  Specifically, the Debtor sought the Court's authority to condominium units 302, 306, 401, 402, 403, 404, 405, 406, 501, 503, 506, 601, 606, PH-1, PH-2, PH-5 and PH-6 (the "**Bulk Sales Motion**").  The Bulk Sales motion sought the permission of the Bankruptcy Court to record condominium documents free and clear from encumbrances.

On August 13, 2019, the LJRL (disputed) and LJRM (disputed) filed a response to the Debtor's Bulk Sales Motion.

On September 4, 2019, the Bankruptcy Court entered an Agreed Final Order Approving the Sale of Real Property (Unit 301) free and clear of all liens, claims, encumbrances and interests by private sale.

On September 11, 2019, the Debtor filed a Motion to Approve Compromise and Settlement between the Debtor and Devstar Realty, LLC, the Debtor's in-house real estate broker and sales agent relating to the marketing and selling the Debtor's Real Property Assets.

On September 13, 2019, the Bankruptcy Court entered Agreed Final Orders Approving the Sale of the following Real Property Assets free and clear of all liens, claims, encumbrances and interests by private sale:  Condominium Units #402 and 403.

On September 14, 2019, the Bankruptcy Court entered Agreed Final Orders Approving the Sale of the following Real Property Assets free and clear of all liens, claims, encumbrances and interests by private sale:  Condominium Units #302, 306, 401, 404, 405, 406, 501, 503, 505, 601, 606, PH-1, PH-2 and PH-5.

On September 17, 2019, the Bankruptcy Court entered an Order approving the Debtor's employment and engagement of Brett D. Lieberman, Esq. and Edelboim Lieberman Revah Oshinsky PLLC.

On September 17, 2019, the Bankruptcy Court entered Amended Agreed Final Orders Approving the Sale of the following Real Property Assets free and clear of all liens, claims, encumbrances and interests by private sale: Condominium Units #701, 702, 705 and 706.

On September 20, 2019, the Debtor filed an Agreed Motion for Order Recognizing and Affirming the Partial Release of Lis Pendens with respect to the Debtor's sales of condominium units subject of the Bulk Sale Motion.

On September 22, 2019, the Bankruptcy Court entered an Agreed Order Granting the Debtors' Motion for Order Recognizing and Affirming the Partial Release of Lis Pendens with respect to the Debtor's sales of condominium units subject of the Bulk Sale Motion.

## III.    SUMMARY OF THE PLAN

The Plan is attached hereto as **Exhibit "A."** The Plan contemplates the orderly reorganization of Debtor's affairs. Debtor believes the Plan provides the greatest possible recovery for Creditors at the lowest possible cost. Debtor believes acceptance of the Plan is in the best interest of Creditors and recommends that all voting classes entitled to vote accept the Plan.

### 3.1.    CLAIMS AND INTERESTS

#### 3.1.1.    Unclassified Claims

##### 3.1.1.1. Administrative Claims

The Plan provides that unless the Holder agrees to different treatment, all Administrative Claims, other than Ordinary Course Administrative Claims, arising prior to and on the Effective Date, will be paid by the Debtor, in full, in Cash on the later of: (1) on or as soon as practicable after the Effective Date; or (2) if an Administrative Claim is not Allowed as of the Effective Date, then or as soon as practicable after an order becomes a Final Order by which such Administrative Claim becomes an Allowed Administrative Claim.

##### 3.1.1.2. Ordinary Course Administrative Claims

Allowed Ordinary Course Administrative Claims will be paid pursuant to the terms and conditions giving rise to such Administrative Claim, without the need for any further Final Order or action by the Holders of such Ordinary Course Administrative Claims.

##### 3.1.1.3. U.S. Trustee Fees

The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) within ten days of the entry of the confirmation order for pre-confirmation periods and simultaneously file with the Court the monthly operating reports for all pre-confirmation periods.   Furthermore, the Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods and simultaneously file with the Court quarterly post-confirmation reports, until the earlier of the

closing of this case by the issuance of a Final Decree by the Court, or upon the entry of an Order by this Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.

### 3.1.1.4. Priority Tax Claims

All Priority Tax Claims that are not fully paid in Cash on the later of (1) the Effective Date or (2) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, shall instead be paid in regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim over a period ending not later than five years after the Petition Date, and in a manner not less favorable than the most favored General Unsecured Claim provided for by the Plan. Notwithstanding the foregoing, each Holder of an Allowed Priority Tax Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtor, as the case may be. Priority Tax Claims in Debtor's bankruptcy case include the following:

| CLAIMANT | CLAIM | AMOUNT |
|---|---|---|
|  |  |  |
|  |  |  |
|  | Total: |  |

### 3.1.1.5. Professional Fee Claims

Professional Fee Claims will consist primarily of fees and expenses of Debtor's counsel and professionals hired in connection same. Allowed Professional Fee Claims shall be paid after application of any retainers received prior to the Petition Date. All Professionals seeking Professional Fees arising prior to and on the Effective Date, shall file their respective final applications for Professional Fees prior to the Administrative Claims Bar Date or pursuant to any other deadlines and procedures as may otherwise be established by the Bankruptcy Court. As of the date hereof, no Professional engaged in this Bankruptcy Case has filed an application seeking payment of Professional Fees. It is anticipated that professional fee expenses will approach $125,000.

### 3.1.2. Classified Claims and Interests

### 3.1.2.1. Claims of Secured Creditors

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| CLASS 1:<br><br>Secured Claim of Titan Capital | Impaired | In full and complete satisfaction, discharge and release of its Allowed Secured Claim and/or any other Claim against the Debtor, Titan Capital shall receive ninety five percent (95%) of the Net Proceeds from the sale of Real Property Assets until paid in full. |

| | | |
|---|---|---|
| **CLASS 2:**<br><br>Secured Claim of LJRL | Impaired | In full and complete satisfaction, discharge and release of its Allowed Secured Claim and/or any other Claim against the Debtor, LJRL shall receive, after payment of Allowed Class 1 Claims in full, ninety five percent (95%) of the Net Proceeds from the sale of Real Property Assets until paid in full. Notwithstanding the foregoing treatment, the Debtor disputes this Claim in full. For purposes of the Plan, the Debtor shall treat the Claim as a Disputed Claim and shall deposit funds equal to 100% of such Disputed Claim in the Disputed Claim Reserve. The Debtor is not proposing to pay any portion of this Disputed Claim until it shall become an Allowed Claim, if at all. If the Class 2 Claim is disallowed in total or in part, the balance remaining in the Disputed Claim Reserve allocated for Class 2 Claim will be distributed pro-rata to junior claims or interests as applicable. |
| **CLASS 3:**<br><br>Secured Claim of Titan Subordinated Lender | Impaired | In full and complete satisfaction, discharge and release of its Allowed Secured Claim and/or any other Claim against the Debtor, Titan Subordinated Lender shall receive, after payment of Allowed Class 1 Claims and Allowed Class 2 Claims in full, ninety five percent (95%) of the Net Proceeds from the sale of Real Property Assets until paid in full. Notwithstanding the foregoing treatment, the Debtor reserves it's right to dispute the Class 3 Claim. For purposes of the Plan, the Debtor shall treat the Class 3 Claim as a Disputed Claim and shall deposit funds equal to 100% of such Disputed Claim in the Disputed Claim Reserve. The Debtor is not proposing to pay any portion of this Disputed Claim until it shall become an Allowed Claim, if at all. If the Class 3 Claim is disallowed in total or in part, the balance remaining in the Disputed Claim Reserve allocated for Class 3 Claim will be distributed pro-rata to junior claims or interests as applicable. |
| | | |

### 3.1.2.2.    Claims of General Unsecured Creditors

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|

| | | |
|---|---|---|
| **CLASS 4:**<br><br>General Unsecured Claims | Impaired | Each holder of an Allowed General Unsecured Claim, shall, in full and complete settlement, satisfaction and discharge of such Allowed General Unsecured Claim receive: (i) on the Effective Date, their Pro Rata Share of the Cash available after payment and reservation for senior claimants; (ii) subsequent to the Effective Date, within 21 days of the closing of each sale of unit of Real Property of the Debtor, an amount equal to its Pro Rata Share of the available Net Proceeds from such sale or such other treatment as may be consensually agreed to by the Debtor and the holder of an Allowed General Unsecured Claim. |

### 3.1.2.3.  Equity Interest Holders

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| **CLASS 5:**<br><br>Equity Interests | Unimpaired | On the Effective Date, Each holder of an equity interest shall retain such equity interest and shall retain, unaltered, the legal, equitable, and contractual rights to which such equity interest entitles such holder. |

## 3.2.  MEANS OF IMPLEMENTING PLAN

Debtor will fund payments to be made under the Plan through the following: (1) cash on hand on the Effective Date; and/or (2) sales of the Debtor's Real Property in the ordinary course of business on and after the Effective Date until all Allowed Claims are paid in full.

The Debtor will continue to exist after the Effective Date as a business entity with all of the powers of a limited liability company under applicable law in the jurisdiction in which the Debtor is organized or otherwise formed and pursuant to its organizational documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan or pursuant to any amended articles of organization. Notwithstanding the foregoing, the Debtor may change its status of organization or formation or alter its corporate structure (either through mergers, consolidations, restructurings, conversions, dispositions, liquidations, dissolutions, or otherwise) after the Effective Date, subject to its organizational documents, as may be determined by Debtor to be appropriate.

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved

pursuant to the Plan. All Distributions made to Holders of Allowed Claims are intended to be and shall be final.

### 3.3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Bankruptcy Code allows Debtor to assume and assign executory contracts and unexpired leases under the Plan. Assumption means Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and that there will be a cure of certain defaults prior to any such assumption (and subsequent assignment) to the extent required under the Bankruptcy Code.

The Plan provides that any Executory Contracts or Unexpired Leases not assumed or conditionally assumed by Confirmation (or subject to a pending motion to assume) shall be deemed rejected upon Confirmation. Debtor reserves the right under the Plan to assume (or reject) any and all other Executory Contracts and/or Unexpired Leases to which Debtor is a party. If Debtor elects to assume a contract or lease, and the counterparty objects to the assumption of the Unexpired Lease or Executory Contract, the proposed cure of any defaults, or the adequacy of assurance of performance, that Person or Entity must file and serve such objection to the Debtor within the deadline for objecting to Confirmation of the Plan, unless the Court has set an earlier time. Failure to do so will be deemed consent to the treatment proposed in the Plan.

Unless the Bankruptcy Court has specifically ordered otherwise, the deadline for filing a Proof of Claim based on a Claim arising from the rejection of a lease or contract is the earlier of: (1) thirty (30) days from the date of the entry of an order rejecting an Unexpired Lease or Executory Contract; or (2) thirty (30) days from date of the entry of the Confirmation Order. Any Claim based on the rejection of an Unexpired Lease or Executory Contract will be barred if the Proof of Claim is not timely filed.

### IV.    RISK FACTORS TO CONSIDER

IMPLEMENTATION OF THE PLAN IS SUBJECT TO A NUMBER OF MATERIAL RISKS, INCLUDING THOSE ENUMERATED BELOW. IN EVALUATING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, HOLDERS OF CLAIMS AGAINST AND INTERESTS IN DEBTOR SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN), BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS ASSOCIATED WITH THE PLAN AND ITS IMPLEMENTATION, OR ALTERNATIVES TO THE PLAN.

The following is a summary of risk factors associated with the Plan, but is not exhaustive and must be supplemented by the analysis and evaluation of the Plan and this Disclosure Statement as a whole by each holder of a claim or interest with such holder's own advisors.

### 4.1.    Parties in Interest May Object to Debtor's Classifications

Section 1122 of the Bankruptcy Code provides that a plan of reorganization may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Debtor believes that the classification of claims and interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, the Debtor cannot assure you that the Bankruptcy Code will reach the same conclusion.

### 4.2.    Possible Loss of Favorable Tax Attributes

Although Debtor does not believe that implementation of the Plan will itself result in significant tax liability, the proposed transactions could potentially reduce any favorable tax attributes that the Debtor may otherwise be entitled to. The reduction of, and potential limitations on the Debtor's ability to use such favorable tax attributes could adversely affect Debtor's financial position in future years.

### 4.3.    Debtor May Not Be Able to Secure Confirmation of the Plan

Debtor cannot assure that requisite acceptances to confirm the Plan will be received. Even if requisite acceptances are received, Debtor cannot assure the Bankruptcy Court will confirm the Plan. A non-accepting Holder of a claim or equity interest might challenge the balloting procedures and results as not being in compliance with the Code or Bankruptcy Rules. Even if the Bankruptcy Court determined this Disclosure Statement and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any statutory requirements for confirmation had not been met.

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, a finding by the Bankruptcy Court that confirmation of the plan is not likely to be followed by a liquidation or a need for further financial reorganization and that value of distributions to non-accepting Holders of claims and interests within a particular class under the plan will not be less than the value of distributions such Holders would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan will not be followed by a need for further financial reorganization and that Holders within each class under the Plan will receive distributions at least as great as would be received following a liquidation under Chapter 7 of the Bankruptcy Code when taking into consideration all administrative expense claims and the costs and uncertainty associated with any such Chapter 7 case.

### 4.4.    Inherent Uncertainty of Financial Projections

Debtor's projected financial performance will necessarily be based on numerous assumptions, including confirmation and consummation of the Plan in accordance with its terms; realization of the operating strategy of the Debtor; industry performance; no material adverse changes in applicable legislation or regulations, or the administration thereof, or generally accepted accounting principles; no material adverse changes in general business and economic conditions; no material adverse changes in competition; the Debtor's retention of key

management and other key employees; adequate financing; the absence of material contingent or unliquidated litigation, indemnity, or other claims; and other matters, many of which will be beyond the control of Debtor and some or all of which may not materialize.

To the extent that any assumptions are based upon future business decisions and objectives, they are subject to change. In addition, although they are presented with numerical specificity and are based on assumptions considered reasonable by the Debtor, assumptions and estimates contained in the Plan and Disclosure Statement are subject to significant business, economic, and competitive uncertainties and contingencies, many of which will be beyond Debtor's control. It can be expected that some or all of the assumptions will not be realized and that actual results will vary. In light of the foregoing, Holders of Claims and Interests are cautioned not to place undue reliance on any projections that may be provided in connection with the Plan. The projected financial information should not be regarded as a representation or warranty by the Debtor, the Debtor's advisors, or any other Person that such projections can or will be achieved.

### 4.5.    Executory Contracts and Unexpired Leases

Unless provided by separate order, Debtor will be conclusively deemed to have assumed all executory contracts and/or unexpired leases upon confirmation of the Plan. If you object to the assumption of your unexpired lease or executory contract or assert a default or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set a separate time.

If the Debtor wants to reject your contract or lease, it will do so through separate motion whereupon the Court shall set a deadline for you to object to such rejection and to file a proof of claim *arising from the rejection.* Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### 4.6.    Tax Consequence of Plan

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.***

The following are the anticipated tax consequences of the Plan:

### 4.6.1.    Consequences to Holders of Secured Claims

The following discussion assumes that each Holder of an Allowed Secured Claim holds such claim as a "capital asset" within the meaning of Section 1221 of the IRC. If an Allowed secured claim remains secured by a lien on the Debtor's assets, the Holder of such claim should not recognize a gain or loss except to the extent collateral securing such claim is changed, and the change in collateral constitutes a "significant modification" of the Allowed secured claim within the meaning of Treasury Regulations promulgated under Section 1001 of the IRC. If an Allowed secured claim is paid in full in cash, the Holder should recognize a capital gain or loss (which capital gain or loss would be a long-term capital gain or loss to the extent that the Holder has held the debt instrument underlying its claim for more than one (1) year) in an amount equal to the amount of cash received over the Holder's adjusted basis in the debt instrument(s)

underlying its Allowed secured claim. To the extent that a portion of the cash received represents accrued but unpaid interest that the Holder has not already taken into income, the Holder may recognize ordinary interest income.

### 4.6.2.  Consequences to Holders of Priority Claims

To the extent the Holder of an Allowed Priority Claim receives a Distribution under the Plan, such Holder should recognize such Distribution as ordinary income and submit the appropriate withholdings based on that Holder's particular circumstances. Debtor shall make any appropriate withholdings from such Distributions.

### 4.6.3.  Consequences to Holders of General Unsecured Claims

To the extent the Holder of an Allowed unsecured claim receives less than full payment on account of such claim, the Holder of such claim may be entitled to assert a bad debt deduction or worthless security deduction with respect to such Allowed unsecured claim.

To the extent that any amount received by a Holder of an Allowed unsecured claim under the Plan is attributable to accrued but unpaid interest and such amount has not previously been included in the Holder's gross income, such amount should be taxable to the Holder as ordinary interest income. Conversely, a Holder of an Allowed General Unsecured Claim may be able to recognize a deductible loss (or, possibly, a write-off against a reserve for worthless debts) to the extent that any accrued interest on the debt instruments constituting such claim was previously included in the Holder's gross income but was not paid in full by Debtor. Such loss may be ordinary, but the tax law is unclear on this point.

### 4.6.4.  Consequences to Equity Interest Holders

Debtor is recognized as a "pass through" entity under the IRC. As such, the tax consequences of Debtor's generations of profit or loss in a given year generally "passes through" to Debtor's Equity Interest Holders. Allocations of profits and losses are generally governed by ownership allocation of the company. As such, the tax consequences of the Plan will vary depending on the specific circumstances of each Equity Interest Holder.

### 4.6.5.  Certain U.S. Federal Income Tax Consequences of the Plan

Under the Tax Code, a U.S. taxpayer generally must include in gross income the amount of any COD income realized during the taxable year, which generally includes the amount of principal debt discharged and any interest that has been previously accrued and deducted for tax purposes but remains unpaid at the time the indebtedness is discharged. The Tax Code permits a debtor in bankruptcy to exclude its COD income from gross income, but requires the debtor to reduce certain tax attributes by the amount of the excluded COD income. To the extent the amount of excluded COD Income exceeds the Tax Attributes available under the ordering rules found in the treasury regulations related to members of a consolidated group, the remaining COD Income generally has no adverse federal income tax consequences. It is likely that the Debtor will realize a significant amount of COD Income upon the consummation of the Plan. However, the Debtor will not be required to include COD Income in gross income because the indebtedness will be discharged while the Debtor is under the jurisdiction of a court in a Title 11

case.

### 4.6.6.  Backup Withholding and Reporting

Debtor will withhold all amounts required by law to be withheld from payments subject to federal taxes, if any, and will comply with all applicable reporting requirements of the IRC.

### 4.6.7.  IRS Circular 230 Notice

Any tax advice contained in this Disclosure Statement (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of: (1) avoiding tax-related penalties under the IRC; or (2) promoting, marketing, or recommending to another party any tax-related matter addressed herein.

## V.    CONFIRMATION REQUIREMENTS AND VOTING PROCEDURES

To be confirmable, the Plan must meet the requirements listed in Sections 1129(a) or (b) of the Bankruptcy Code. These requirements include: (1) the Plan must be proposed in good faith; (2) at least one Impaired Class of Claims must accept the Plan, without counting the votes of Insiders; (3) the Plan must distribute to each Creditor and Equity Interest Holder at least as much as the Creditor or Equity Interest Holder would receive in a chapter 7 liquidation case, unless the Creditor or Equity Interest Holder votes to accept the Plan; (4) and the Plan must be feasible. These requirements are not the only requirements listed in Section 1129, and they are not the only requirements for Confirmation.

### 5.1.    WHO MAY VOTE OR OBJECT

Any party in interest may object to Confirmation of the Plan if the party believes the requirements for Confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A Creditor or Equity Interest Holder has a right to vote for or against the Plan only if that Creditor or Equity Interest Holder has a Claim or Equity Interest that is: (1) Allowed or allowed for voting purposes; and (2) Impaired.

### 5.1.1.  Claims Entitled to Vote

Only a Creditor with an Allowed Claim has the right to vote on the Plan. Generally, a Claim is Allowed if: (1) Debtor has scheduled the Claim on the Debtor's Schedules, unless the Claim has been scheduled as disputed, contingent, or unliquidated; or (2) the Creditor has filed a Proof of Claim, unless an objection has been filed to such Proof of Claim. When a Claim is not Allowed, the Creditor holding the Claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or Allows the Claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

As noted above, the Holder of an Allowed Claim has the right to vote only if it is in a Class that is Impaired under the Plan. As provided in Section 1124 of the Bankruptcy Code, a Class is considered Impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class.

### 5.1.2.  **Who is Not Entitled to Vote**

The Holders of the following five types of Claims and Equity Interests are ***not*** entitled to vote: (1) Holders of Claims and Equity Interests that have been Disallowed; (2) Holders of other Claims or Equity Interests that are not "Allowed Claims" (as discussed above), unless they have been "Allowed" solely for voting purposes; (3) Holders of Claims in Unimpaired Classes; (4) holders of Claims entitled to priority pursuant to Sections 507(a)(2), (a)(3), and (a)(8) of the Bankruptcy Code (Administrative Claims and Priority Tax Claims); and (5) Holders of Claims in Classes that do not receive or retain any value under the Plan.

### 5.1.3.  **Who Can Vote in More than One Class**

A Creditor with a Claim that has been Allowed in part as a Secured Claim and in part as an Unsecured Claim, or who otherwise holds Claims in multiple Classes, is entitled to accept or reject the Plan in each capacity and should cast one Ballot for each Claim.

### 5.2.   **HOW TO VOTE**

Accompanying this Disclosure Statement is a solicitation package containing copies of the following: (1) the Plan; (2) a Ballot; and (3) a Disclosure Statement Order, which, among other things, conditionally approves this Disclosure Statement as containing "adequate information" in accordance with Section 1125 of the Bankruptcy Code, establishes the procedures for voting on the Plan, schedules a hearing to consider confirmation of the Plan, and sets the deadline for voting on and objecting to Confirmation.

After carefully reviewing all of the documents contained in the solicitation package, exhibits, and any other documents referenced therein, Creditors in voting Classes should complete the enclosed Ballot, indicating their vote with respect to the Plan, and return it as provided below.

If you are a member of a voting Class and did not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please immediately call counsel for Debtor at (305) 768-9912.

**CREDITORS IN VOTING CLASSES SHOULD COMPLETE AND SIGN THE ENCLOSED BALLOT AND RETURN IT AS DESCRIBED BELOW. EACH HOLDER OF A CLAIM IN A VOTING CLASS MAY CAST ONLY ONE BALLOT FOR EACH SUCH CLAIM HELD. IN ORDER TO BE COUNTED, BALLOTS MUST BE DULY COMPLETED AND EXECUTED AND RECEIVED NO LATER THAN _____, 2019 at 4:00 P.M. (EST), UNLESS EXTENDED. ANY BALLOT THAT IS PROPERLY EXECUTED BY THE HOLDER OF A CLAIM AND TIMELY SUBMITTED, BUT WHICH DOES NOT CLEARLY INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN OR WHICH INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN, SHALL NOT BE COUNTED.**

All Ballots should be returned by regular mail, hand delivery, or overnight delivery to:

Clerk of Court
U.S. Bankruptcy Court
301 North Miami Avenue, Room 150
Miami, FL 33128

A copy of the executed Ballot should also be mailed to:

Brett D. Lieberman
Edelboim Lieberman Revah Oshinsky PLLC
20200 W. Dixie Highway, Suite 905
Aventura, FL 33180

### 5.3.    VOTE NECESSARY TO CONFIRM PLAN

If Impaired Classes exist, the Court cannot confirm the Plan unless: (1) at least one Impaired Class of Creditors has accepted the Plan without counting the votes of any Insiders within that Class; and (2) all Impaired Classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" of non-accepting Classes.

#### 5.3.1.    Votes Necessary for a Class to Accept the Plan

A Class of Claims accepts the Plan if both of the following occur: (1) the Holders of more than one-half (1/2) of the Allowed Claims in the class, who vote, cast their votes to accept the Plan; and (2) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan. A Class of Equity Interests accepts the Plan if the Holders of at least two-thirds (2/3) in amount of the Allowed Equity Interests in the Class who vote cast their votes to accept the Plan.

#### 5.3.2.    Treatment of Non-Accepting Classes

Even if one or more Impaired Classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner prescribed by Section 1129(b) of the Bankruptcy Code. A plan that binds non-accepting Classes is commonly referred to as a "cram down" plan. The Bankruptcy Code allows the Plan to bind non-accepting Classes of Claims or Equity Interests if it meets all the requirements for consensual Confirmation except the voting requirements of Section 1129(a)(8) of the Bankruptcy Code, does not "discriminate unfairly," and is "fair and equitable" toward each Impaired Class that has not voted to accept the Plan.

### VI.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION

Debtor believes the Plan affords Holders of Claims the greatest opportunity for realization of any value on Debtor's Assets. Therefore, Debtor believes the Plan is in the best interests of Holders of Claims and Interests. If the Plan is not confirmed, however, the theoretical alternatives include: (1) liquidation of the Debtor under chapter 7 of the Bankruptcy Code; or (2) alternative plans chapter 11 of the Bankruptcy Code.

### 6.1.    LIQUIDATION UNDER CHAPTER 7

Debtor believes that, under the Plan, each Holder of Impaired Claims will receive property of a value not less than the value such Holder would receive in a liquidation of the Debtor under chapter 7 of the Bankruptcy Code. That belief is based primarily upon extensive consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for Distribution to Holders of Claims, including, but not limited to (1) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a chapter 7 trustee and professional advisors to that trustee, and (2) the erosion (or total elimination) in value of any remaining Assets in a chapter 7 case in the context of the rapid liquidation required under chapter 7 and the "forced sale" atmosphere that would prevail. That belief is also based upon a Liquidation Analysis, which is attached hereto **Exhibit "A."** Furthermore, even the Liquidation Analysis will not reflect the likely delay in the timing of Distributions to Holders of Claims in a liquidation scenario where the Debtor must resolve all Claims prior to making Distributions, a process that could take more than a year. If these delays are considered, the present value of any liquidation proceeds would be further reduced.

Debtor believes that any liquidation analysis is speculative as such analyses are necessarily premised upon assumptions and estimates that are inherently subject to significant uncertainties and contingencies, many of which would be beyond the control of the Debtor. Thus, there can be no assurance as to values that would actually be realized in a chapter 7 liquidation, nor can there be any assurance that the Bankruptcy Court will accept the Debtor's conclusions or concur with such assumptions in making its determinations under Section 1129(a)(7) of the Bankruptcy Code.

### 6.2.    OTHER ALTERNATIVES

If the orderly liquidation and reorganization proposed by the Plan is not confirmed, Debtor and other parties may attempt to confirm a different chapter 11 Plan. That alternate plan could propose a reorganization of the Debtor (which Debtor believes to be highly unlikely) or some other form of liquidation. However, Debtors does not believe any alternative plan can be proposed that provides a greater benefit to Creditors than the Plan. In any plan under chapter 11, however, Debtor's Assets could be administered in an orderly fashion potentially yielding a greater recovery than liquidations under chapter 7.

### VII.    SUMMARY, RECOMMENDATION, AND CONCLUSION

The Plan provides for an orderly and prompt Distribution to Holders of Allowed Claims and the satisfaction of all asserted Claims and Interests. In the opinion of Debtor, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for a larger Distribution to Debtor's Creditors than would otherwise result from liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller Distributions to Holders of Allowed Claims than proposed under the Plan. ***Accordingly, Debtor recommends that Holders of Claims entitled to vote on the Plan support Confirmation of the Plan and vote to accept the Plan.***

Le Jardin House, LLC

By: _____

Name: Tim Lobanov

Title: ___Authorized Agent___